Grace DUNCAN, Plaintiff–Appellant,

v.

Lorene DUNCAN, Defendant–Respondent,

Charles Duncan and Mary Duncan, his wife, Defendants–Appellants,

Duncan Brothers, Inc., Intervenor–Defendant–Appellant.

No. 15334.

Missouri Court of Appeals, Southern District, Division Two.

April 29, 1988.

Motion for Rehearing or to Transfer Denied May 16, 1988.

Application to Transfer Denied June 14, 1988.

L. Dwayne Hackworth, Hackworth and Schuller, Piedmont, for plaintiff-appellant.

J.B. Schnapp, Robin E. Fulton, Schnapp, Graham, Reid & Fulton, Fredericktown, for defendant-respondent.

FLANIGAN, Judge.

"Oh, what a tangled web we weave ..."

Appellants Grace Duncan, Mary Duncan, Charles Duncan (Mary's husband), and Duncan Brothers, Inc., a Missouri corporation (hereinafter, "the corporation"), appeal from a judgment of the Circuit Court of Wayne County entered July 28, 1987 (hereinafter, "the second judgment"). The only other party to this appeal is respondent Lorene Duncan.

The same parties were before this court in an earlier chapter of this continuing controversy, *Duncan v. Rayfield,* 698 S.W.2d 876 (Mo.App.1985). In that proceeding, however, Lorene was the sole appellant and the instant appellants were respondents. At all stages of the proceedings, both in the trial court and in this court, Grace Duncan, Mary Duncan, Charles Duncan, and the corporation have been represented by the same lawyer, L. Dwayne Hackworth. The four appellants have joined in the same brief on this appeal.

The factual background to the controversy is set forth in the prior opinion of this court, and this opinion should be viewed in light of that background. That being so, a more general statement of the facts may be given here than would otherwise be necessary.

The instant appeal deals with a tract of land of approximately 453 acres in Wayne County. The original opinion referred to a 460-acre tract, of which the 453 acres is a part, as Tract A. The other seven acres of the 460-acre tract were referred to as Tract B. The 453 acres in dispute consist of Tract A minus Tract B and, in the interest of brevity, will be called Tract C in this opinion. On June 15, 1984, the trial court entered a judgment ("the first judgment"), which was the basis of the original appeal to this court.

The first judgment was the culmination of an action to quiet title to Tract A. The first judgment included an adjudication of the title to Tract B concerning which there has never been a genuine dispute. In that action, Lorene Duncan claimed that she was an owner of an undivided ¼ interest in Tract C and sought partition by sale. In the first judgment the trial court found that the corporation was the sole owner in fee simple of Tract C and that Grace Duncan, Mary Duncan, and Charles Duncan, each being an instant appellant, and Lorene Duncan, instant respondent, had no interest in or title to Tract C. The trial court denied Lorene Duncan's request for partition because, so it then found, Lorene Duncan did not own an interest in Tract C.

Lorene Duncan was the only party who appealed from the first judgment. Her appeal was successful. This court held that Lorene owned, as a tenant in common, an undivided ¼ interest in Tract C, and that the other parties had no interest in said undivided ¼ interest and that the trial court erred in holding otherwise. This

court reversed the first judgment and remanded the cause with directions to the trial court to reinstate Lorene Duncan's pleadings seeking partition and to take appropriate action thereon.

After remand, the corporation sought leave of the trial court to amend its counterclaim and cross-claim, but the trial court denied that request. On July 28, 1987, the trial court entered the second judgment, which found that Lorene Duncan was the owner of an undivided ¼ interest in Tract C, that the corporation was the owner of an undivided ¾ interest in Tract C, that Lorene Duncan and the corporation were tenants in common in Tract C, and that none of the other parties, including Grace Duncan, Mary Duncan, and Charles Duncan, had any right to or interest in Tract C. The judgment further found that Tract C could not be partitioned in kind without great prejudice, and ordered it to be sold for cash, with the proceeds of the sale (after deductions for certain expenses not questioned here) to be divided between Lorene Duncan and the corporation according to their respective interests. The instant appeal followed.

Appellants' points are:

1. "The trial court erred in its judgment in partition in finding that [the corporation] owns an undivided three-fourths [¾] interest in [Tract C] in that this court had previously ruled on this issue, and therefore, was the law of the case and binding on the trial court in the partition action."

2. "The trial court erred in ordering [Tract C] sold in that there was no substantial evidence that [Tract C] could not be partitioned in kind without great prejudice to the parties in interest and thus the trial court had no jurisdiction to order [Tract C] sold."

3. "The trial court erred in denying and overruling the motion for leave to file first amended cross-claim and counterclaim of [the corporation] in that after this court reversed the trial court's original judgment finding [the corporation] to be the owner of the property by resulting trust, [the corporation] was entitled to

assert an equitable lien against the property for the purchase price it had paid for the property on behalf of the owners."

An examination of appellants' three points discloses that each of them pertains exclusively to matters involving Tract C. In the first judgment the trial court found, among other things, that Grace Duncan, Mary Duncan, and Charles Duncan had no interest in or title to Tract C. None of those three individuals appealed from the first judgment. Indeed the pleading of Mary Duncan and Charles Duncan denied that Mary Duncan owned an interest in Tract C and that was tantamount to pleading that Charles Duncan also owned no interest in Tract C, because any interest he might otherwise have had was a spousal interest deriving from the fact that he was Mary's husband. The pleading of Grace Duncan denied that she owned any interest in Tract C.

Appellants' brief on this appeal states: "At trial ... Mary Duncan and Grace Duncan ... testified that they did not claim any interest in the property.... Appellant [the corporation] made a claim for title under a resulting trust. Appellants Grace Duncan, Mary Duncan, and Charles Duncan acquiesced since they had never claimed any interest in the property."

During his oral argument for appellants on the instant appeal, attorney Hackworth stated, with respect to the first judgment, that Grace Duncan, Mary Duncan, and Charles Duncan "got the result they were seeking in the trial court," and that "Mary Duncan and Grace Duncan at no time claimed to own any interest in [Tract C]." He stated that Mary Duncan and Grace Duncan were content with the first judgment and for that reason did not appeal, and that the first judgment was "totally favorable" to his clients and that the position of Grace Duncan and Mary Duncan has been, consistently, that they had no interest in Tract C and that the corporation owned it.

It should also be noted that none of appellants' three points in the instant appeal makes any claim that Grace Duncan,

Mary Duncan, or Charles Duncan has any interest in Tract C. "The questions for decision on appeal are those stated in the points relied on, and a question not there presented will be considered abandoned on appeal and no longer an issue in the case." *Pruellage v. De Seaton Corporation*, 380 S.W.2d 403, 405[3] (Mo.1964). To similar effect see *Conway v. Judd*, 723 S.W.2d 905, 906 (Mo.App.1987); *Smith v. Welch*, 611 S.W.2d 398, 399[1] (Mo.App.1981).

■ The foregoing makes it clear that Grace Duncan, Mary Duncan, and Charles Duncan have no interest in this appeal and no standing to prosecute it. The first judgment found that they had no interest, and they did not appeal from it. Each of them has repeatedly disavowed any interest in Tract C, *and they continue to do so.*

"A party not aggrieved by a judgment has no right of appeal. ... A party is not 'aggrieved' by a judgment unless the judgment directly affects some pecuniary or property right or interest which he possesses." *Davis v. Allen*, 740 S.W.2d 699, 700 (Mo.App.1987). (Citing authorities.)

In *Rohlf v. Hayes*, 287 Mo. 340, 229 S.W. 747 (1921), plaintiff filed an action against two defendants to quiet title to certain real estate. The trial court entered judgment for plaintiff, and defendants appealed, seeking to challenge the sufficiency of the evidence to show fee simple title in plaintiff. At p. 747 the court said:

"In this case defendants did not default, nor did they consent to a judgment for plaintiff as per his petition. They answered, but only by the general denial set out in the statement. By this general denial they denied that they claimed any title or interest in the premises. With this denial of record, *they passed out of the case below, and here,* as parties having an interest in the subject-matter of the litigation. When they denied, as they did, that they claimed either title or interest in the property, it is hard to conceive their further interest in the case nisi, *or here.*" (Emphasis added.)

"[O]rdinarily a judgment or decree which affects or determines rights in particular property does not aggrieve a party who has, or claims, no interest or title to the property." *Campbell Street Lumber Co. v. Central Mortgage Co.*, 436 S.W.2d 57, 60 (Mo.App.1968). See also *Southern Reynolds County School Dist. R–2 v. Callahan*, 313 S.W.2d 35, 39 (Mo.1958); *Feeler v. Reorganized School District No. 4*, 290 S.W.2d 102, 104 (Mo.1956).

This court holds that the appeal of Grace Duncan, Mary Duncan, and Charles Duncan is frivolous and that respondent's motion for damages for frivolous appeal, based on Rule 84.19,[1] is meritorious. A specific ruling on that motion is set forth in the final paragraph of this opinion.

The three points, *as raised by the corporation,* will be examined in order.

The corporation's first point has no validity for the reason that it seeks to complain that the trial court erred in finding that the *corporation* owned an undivided ¾ interest in Tract C. That finding, however, is favorable to the corporation. It may not complain of such a finding. *Hatch v. Rhyne*, 253 S.W.2d 170, 176[11] (Mo.1952); *Fleming v. Anderson*, 232 S.W. 718, 724[14] (Mo.1921); *Sandusky v. Waller*, 272 S.W. 1045, 1048[4] (Mo.App.1925). "No appellate court shall reverse any judgment unless it finds that error was committed by the trial court *against the appellant* materially affecting the merits of the action." Rule 84.13(b). (Emphasis added.)

It should be pointed out that the corporation's first point misstates the matter when it says that this court previously ruled on the issue of the corporation's ownership of an undivided ¾ interest. The trial court held that the corporation owned the entire interest, and this court altered that holding only to the extent of the undivided ¼ interest, Lorene's interest, which was in issue on appeal and to which the appeal was limited.

It is appropriate here to comment upon certain bizarre aspects of this proceeding. It must be remembered that the same at-

---

**1.** All references to rules are to Missouri Rules of Court, V.A.M.R.

torney has represented the corporation and the other three instant appellants, and continues to do so. In their joint brief they state:

"Lorene Duncan owns one-sixth (⅙) of the shares of Appellant, Duncan Brothers, Inc. The Trial Court's judgment would give Respondent the best of both worlds. She is declared to be the owner of a one-fourth (¼) interest in property she did not pay one cent for and a one-sixth (⅙) owner in the corporation which is declared to be the owner of the remaining three-fourths (¾) interest."

The first judgment held that the corporation was the sole owner of Tract C. Only Lorene, who claimed to own an undivided ¼ interest, appealed. The holding with respect to the other ¾ interest was not contested by any of the parties. Although appellants' brief does not expressly say so, either in its points or in its argument, appellants are tacitly seeking to argue that Grace Duncan and Mary Duncan should have the benefit of Lorene's appeal.

On her appeal, with respect to a ¼ interest, Lorene succeeded in eliminating the corporation's claim to title to that ¼ interest. The corporation's claim was based on a theory of resulting trust. The tacit argument: Since that was the same theory on which the corporation advanced its claim with respect to the two ¼ interests of record title respectively held by Grace Duncan and Mary Duncan, that claim must reach the same fate, with the result that each of those two women owns an undivided ¼ interest.

There can be situations when a non-appealing party, occupying a position identical to that of an appellant, may get the benefit of a successful appeal by the latter. In *In re Estate of Leonard*, 467 S.W.2d 84 (Mo.1971), a case involving construction of a will, the probate court correctly ordered the executor to distribute certain shares of stock to 23 specific legatees but the circuit court, on appeal, incorrectly ordered that the shares be distributed to residuary legatees. Seventeen specific legatees appealed to the supreme court, and their appeal was successful. The supreme court held that it

would not direct the executor to follow the erroneous opinion of the circuit court with respect to the six non-appealing specific legatees. The supreme court, at 467 S.W. 2d 88, quoted this general rule:

"Where less than all of several coparties appeal from an adverse judgment, it is generally held that a reversal as to the parties appealing does not necessitate or justify a reversal as to the parties not appealing, but that the judgment may or must be affirmed or left undisturbed as to them, according to the practice prevailing in the particular jurisdiction. * * * The rule that reversal on appeal by a party does not justify reversal in favor or nonappealing parties, however, is not invariable, and *where the judgment is not severable*, or where the rights and interests of the parties are so intermingled and interdependent that reversal in favor of one would injuriously affect the rights of his coparties, the court, if reversal is proper as to appellant, may reverse as to nonappealing parties." (Emphasis in original.)

At p. 90 the court said: "In conclusion, we have determined, *under the facts of this case*, that *justice* calls for application of one of the exceptions to the general rule." (Emphasis added.)

*Leonard* is distinguishable from the case at bar. In *Leonard* the 6 specific legatees who did not appeal did not disavow an interest in the shares of stock. They merely failed to join in the appeal of the 17 specific legatees who were similarly situated. At no time did the 6 non-appealers make war on the 17 appealers, and at no time was the position of the 6 inconsistent with the position of the 17.

This court holds that the present litigation does not warrant a departure from the general rule. If this court were to hold now that Grace Duncan and Mary Duncan each own an undivided ¼ interest in Tract C, such a holding would be contrary to their prior and present positions. Mary Duncan and Grace Duncan have repeatedly disavowed title to Tract C, including of course the undivided ¾ interest which was not in dispute on the prior appeal by Lor-

ene. The corporation previously claimed title to that undivided ¾ interest because it claimed the entire title to Tract C. The first judgment declared that the corporation owned the entire title, and Lorene's appeal was limited to the correctness of that declaration with respect to the undivided ¼ interest which she claimed. Any possible claims which Mary Duncan and Grace Duncan could have made would have been based on matters which merged in the first judgment. Lorene's appeal merely corrected that judgment with respect to an undivided ¼ interest but did not disturb the holding with respect to the other ¾ interest.

The game plan of the four strange bedfellows, the corporation and the other three instant appellants, is clear: In the original proceeding that quartet, by combined efforts through common counsel, sought to defeat Lorene Duncan's claim that she was an owner of an undivided ¼ interest in Tract C. That campaign failed. Lorene Duncan owns ⅙ of the shares of stock in the corporation. The revised game plan is to maneuver so that, *with regard to the undivided ¾ interest of the corporation,* Mary Duncan obtains a third of that ¾ interest, Grace Duncan obtains a third of that ¾ interest, and the corporation is left with the other third of that ¾ interest.[2] If that is accomplished, Lorene's indirect interest (as a shareholder of the corporation) in that undivided ¾ interest would be reduced. Forget the fact, so goes the game plan, that Grace Duncan and Mary Duncan and Mary's husband have consistently denied any ownership. The common enemy remains Lorene Duncan. Since Lorene's direct interest cannot be eliminated, minimize her indirect interest. Although it is necessary to switch legal theories, the adversaries are the same—the four musketeers against Lorene.

■ This court should not, and will not, countenance such trifling with the judicial system. An appellant is bound on appeal by his theory in the trial court and will

not be permitted to change that theory on appeal. *Johnson v. Duensing,* 332 S.W.2d 950, 957 (Mo.banc 1960); *Whale Art Co., Inc. v. Docter,* 743 S.W.2d 511, 515 (Mo. App.1987). "Generally, a party on a second appeal involving the same subject matter and between the same parties is estopped to assert a position or theory inconsistent with that relied on upon the first appeal to the prejudice of his adversary." 5B C.J.S. 190, App. & Err., § 1821d. The quartet of appellants will not be permitted to blow hot and cold, to take one position and then seek to take the opposite, to use the corporate entity when it is to their advantage and seek to pierce the corporate veil when it is not. See *City of Lake Ozark v. Campbell,* 745 S.W.2d 799, 801[2] (Mo.App.1988). This court rejects the corporation's first point.

■ The corporation's second point is frivolous. Lorene Duncan gave the following testimony with regard to Tract C:

"Q. Will you describe this real estate to the court?

A. Well, it's rolling, hills, small hills and valleys, wooded, some of it is cleared.

Q. Do you have an opinion as to whether or not this real estate can be divided in such a manner that each party would get an equal amount, divided in kind?

A. I can't see how it could be.

Q. On what do you base that opinion, why do you say that?

A. Well, it's different. There's hills, there's valleys, and I don't see how it could be divided up.

Q. How about the timber, is there differences in the timber?

A. And the timber, some of it would be on somebody's property and somebody else wouldn't have any.

Q. Would the same be true of the open pasture?

A. I would say so."

**2.** As pointed out in *Duncan v. Rayfield,* 698 S.W.2d 876, 878, footnote 2, the corporation later acquired an undivided ¼ interest in Tract C by deed, and none of the parties has ever

questioned that the corporation was the owner of that undivided ¼ interest. However, patient reader, see the discussion of the corporation's third point infra.

As the excellent brief of respondent Lorene Duncan points out, Charles Duncan, on cross-examination by Lorene's counsel, testified, with regard to Tract C, as follows:

"Q. And you said the highest and best use of this property, in your opinion, was for subdivision purposes?

A. Yes.

Q. And the property is more valuable as a unit for subdivision purposes than it would be if you split it up into smaller tracts for a developer?

A. I think it requires a little more discussion than that.

Q. Generally would that statement be correct?

A. Generally."

The corporation's second point has no merit.[3]

The corporation's third point complains that the trial court erred in denying its motion for leave to file a first amended cross-claim and counterclaim. The corporation's original pleading was a cross-claim against Mary Duncan and Lorene Duncan and a counterclaim against Grace Duncan. The proposed amended pleading contains a cross-claim against Mary Duncan, *Charles Duncan,* and Lorene Duncan, and a counterclaim against Grace Duncan. Note that one musketeer has sued previously, and wants to sue again, other musketeers as well as Lorene. Earlier the other musketeers, through attorney Hackworth, filed responsive pleadings to the corporation's original pleading. The format has the unmistakable aura of a friendly suit among the musketeers[4] and a war against Lorene.

The corporation's original pleading and its proposed amended pleading must be compared to determine the nature of the proposed amendment. The first 11 paragraphs of the original pleading allege: On October 1, 1970, the corporation purchased Tract A [which is composed of Tract B and Tract C];[5] pursuant to said purchase, legal title to Tract A was conveyed by warranty deed dated October 1, 1970, to defendants Rebecca Lorch, Mary Duncan, and Lorene Duncan, and plaintiff Grace Duncan; the corporation furnished the entire purchase price ($90,000); defendant Rebecca Lorch has since conveyed her interest *to the corporation;* the deed of October 1, 1970, was prepared by an attorney, now deceased, who was then an attorney for the corporation; the attorney had no authorization from the corporation "to so prepare said deed, and said deed was so prepared without [the corporation's] knowledge or consent"; "that no gift of said real estate to defendants Rebecca Lorch, Mary Duncan, and Lorene Duncan and plaintiff Grace Duncan was intended or made by [the corporation]." (Emphasis added.)

The amended pleading contains the foregoing allegations with one significant difference. The amended pleading alleges that the interest of defendant Rebecca Lorch "has, through *mesne conveyances,* been conveyed to defendant *Charles L. Duncan."* (Emphasis added.) As stated in footnote 2 of this court's original opinion, however, "Evidence at the trial disclosed that the undivided ¼ interest conveyed to Rebecca Sue Lorch by the deed of October 1, 1970, was acquired, by mesne conveyances, by the corporation and not by Charles Duncan, contrary to the latter's deposition." Does the amended pleading indicate that after the first appeal the cor-

---

**3.** In *Leland Stanford Junior University v. Treat,* 170 S.W.2d 115, 117 (Mo.App.1943), the court said:

"It is true that the general tenor of each of these cases is to the effect that in partition proceedings a division in kind is favored unless it would result in great prejudice to the owners, but of course each of these cases were (sic) necessarily determined on the facts in the given case, and it is significant that, regardless of the general principles announced, in not a single case did the appellate court fail to approve the judgment of the trial court in ordering the lands sold."

**4.** The third point, which Grace Duncan, Mary Duncan, and Charles Duncan also seek to press, is additional proof of the frivolity of their appeal. Could they plausibly argue that they were aggrieved by the ruling of the trial court which refused to permit the corporation to file a new claim *against* them? Clarence Darrow would be daunted by such a task.

**5.** Tract B is not in issue on this appeal, nor was it in issue on the first appeal. See the prior opinion of this court.

poration conveyed that undivided ¼ interest to Charles Duncan? If so, has the revised game plan undergone still another revision in order to eliminate, rather than merely minimize, Lorene's indirect interest? See footnote 2 of this opinion and the discussion to which it is appended.

The rest of the *original* pleading, which varies from the rest of the amended pleading, alleged: The corporation, in purchasing the real estate, intended to have it titled in the name of the corporation; for the "above-stated reasons" defendants Mary Duncan, Lorene Duncan, and plaintiff Grace Duncan hold title to said real estate as trustees for the corporation; defendants Mary Duncan, Lorene Duncan, and plaintiff Grace Duncan refuse to recognize the corporation's interest in the real estate.

The prayer of the original pleading sought the imposition of a resulting trust on the real estate in favor of the corporation and an order divesting Mary Duncan, Lorene Duncan, and Grace Duncan of the title to it.

The rest of the *amended* pleading alleges: "The Missouri Court of Appeals [on the prior appeal] held that no resulting trust existed as to said property in favor of [the corporation] and that the purchase price paid for said property was a loan from [the corporation] to the Duncan Lorch partnership, a partnership comprised of the spouses of the grantees in the abovementioned deed"; "no part of said loan or interest therein has been repaid; due to the wrongful act of [the attorney] in preparing the deed, defendants Lorene Duncan, Mary Duncan, and Charles Duncan, and plaintiff Grace Duncan have been unjustly enriched by the conveyance of said property to them for no consideration, all to the detriment of [the corporation] which furnished the purchase price"; defendant Lorene Duncan has filed her claim for partition and sale of said property; in equity and good conscience the proceeds of any partition sale of said property should be paid to [the corporation] to the extent of the purchase money paid by [the corporation] for the property.

The prayer of the amended pleading sought the imposition of an equitable lien "on the above-described real estate" in favor of the corporation to the extent of the purchase price paid for said property by the corporation, an order that the lien be satisfied out of proceeds of any partition sale of the property, interest "on said moneys," and costs.

After this court handed down its opinion in the first appeal, the four musketeers applied for a transfer to the supreme court. On November 21, 1985, the supreme court denied that application. On November 27, 1985, the cause being again lodged in the trial court, attorney Hackworth filed the following: motion of Grace Duncan to file an amended answer to plaintiff Lorene Duncan's counterclaim for partition; motion of defendants Charles Duncan and Mary Duncan to file an amended answer to Lorene Duncan's cross-claim for partition; motion of [the corporation] to file a first amended cross-claim and counterclaim. None of the motions attached or set forth the substance of the proposed amended pleadings. On July 10, *1987,* the corporation filed its proposed first amended cross-claim and counterclaim. The contents of that pleading have been set forth. The other three musketeers never filed their proposed amended pleadings.

The corporation, in its attempt to obtain full title to Tract C, proceeded solely on the theory of resulting trust. It is true that the first judgment was a short-lived victory for the corporation on that theory, but that is so only with respect to Lorene's ¼ interest. It is also true that the corporation, unlike the other musketeers, was not aggrieved by the first judgment and thus lacked standing to appeal from it.

It is elementary that an owner may not have a lien on his own property. "Assertion of a lien upon property is inconsistent with the assertion of title thereto. *Van Winkle v. Crowell,* 146 U.S. 42, 13 S.Ct. 18, 36 L.Ed. 880; *Robb v. Vos,* 155 U.S. 13, 15 S.Ct. 4, 39 L.Ed. 52." *Intertype Corporation v. Pulver,* 2 F.Supp. 4 (D.C.Fla.1932). See 28 C.J.S.Elect. of Rem., § 5, p. 1069.

In *State ex rel. Hilleary and Partners, Ltd. v. Kelly,* 448 S.W.2d 926, 931 (Mo.App. 1969), the court said:

> "[W]here a party has the right to pursue one of two inconsistent remedies, and he makes his election, and institutes his suit, that in case the action thus begun is prosecuted to final judgment, *or the plaintiff has received anything of value under a claim thus asserted,* he cannot thereafter pursue another and inconsistent remedy. \* \* \*" (Citing authorities.) (Emphasis added.)

The corporation pursued its original cause of action to the first judgment and, to the extent of the undivided ¾ interest, its victory is intact. It is at least a reasonable inference from the proposed amended pleading that it has since conveyed a portion of that interest to Charles Duncan. If that is so, *Hilleary* is authority for the proposition that the corporation has elected its remedy and may not be allowed to assert a claim directly contrary to the one under which it sought and obtained relief. See *Bell v. Butte Inv. Co.,* 250 S.W. 381, 383[1] (Mo.1923); 28 C.J.S.Elect. of Rem., § 14, p. 1087. See also *Branner v. Klaber,* 49 S.W.2d 169, 181[10] (Mo.1932). This opinion, however, is not based on that possible ground.

 It will be observed that the corporation's amended pleading alleges no facts, other than the rendition of this court's first opinion, which were not known to the corporation prior to the trial, held April 18, 1984, which culminated in the entry of the first judgment. The corporation in its original pleading could have advanced the equitable lien and unjust enrichment theories which are set forth in its proposed amended pleading. See Rule 55.06 dealing with joinder of claims and joinder of remedies, and Rule 55.10 which permits pleading in the alternative and permits the pleading of separate claims "regardless of consistency and whether based on legal or equitable grounds." The corporation did not do so. It elected to seek full title.

Whether a party should be permitted to amend his pleading upon remand lies in the sound discretion of the trial court. *Yamnitz v. Polytech, Inc.,* 586 S.W.2d 76, 83[14] (Mo.App.1979); *Kestner v. Jakobe,* 446 S.W.2d 188, 196[9–11] (Mo.App.1969). See also *Calvert v. Safeco Ins. Co. of America,* 660 S.W.2d 265, 271[8] (Mo.App.1983). This court, based on the review of this unique record, holds that the trial court did not abuse its discretion in denying the corporation's motion for leave to file its first amended cross-claim and counterclaim. The corporation's third point has no merit.

Respondent Lorene Duncan has filed in this court a "Motion to Amend Pleadings to Conform to Evidence." That motion, which has not been opposed by appellants, is granted. Respondent has also filed a motion, under Rule 84.19, for damages for frivolous appeal. The motion asks this court to assess damages "in at least the amount of $3,000."

As stated earlier in this opinion, this court holds that the appeal of Grace Duncan, Mary Duncan, and Charles Duncan is frivolous. Although this court has rejected the corporation's third point, this court is not convinced, based on the present record, that the third point was frivolous. Accordingly this court does not assess damages for frivolous appeal against the corporation.

This court holds that respondent Lorene Duncan is entitled to $1,000 as damages for the frivolous appeal of Grace Duncan, and said award shall be assessed against Grace Duncan. This court also holds that respondent Lorene Duncan is entitled to $1,000 as damages for the frivolous appeal of Mary Duncan and Charles Duncan, and said award shall be assessed against them, to be collected from their joint or individual assets. The trial court is directed to modify its judgment to include the allowances of the two foregoing awards. As so modified, the judgment is affirmed and the cause remanded for further proceedings consistent with this opinion.

PREWITT, P.J., and MAUS, J., concur.

HOGAN, J., not participating.