**STATE of Missouri, Respondent,**

v.

**Sam Junior VIRGILITO, Defendant,**

**The Summit Fidelity and Surety Company, Appellant.**

**No. 50349.**

Supreme Court of Missouri,

Division No. 1.

April 13, 1964.

O. R. Newcomer, St. Joseph, for appellant.

Thomas F. Eagleton, Atty. Gen., Clyde Burch, Asst. Atty. Gen., Jefferson City, for respondent.

COIL, Commissioner.

On November 30, 1957, Sam Virgilito, who theretofore had been charged with a felony and had been bound over to await the action of the Circuit Court of DeKalb County, and The Summit Fidelity and Surety Company, a foreign insurance company located in Akron, Ohio, as surety, executed a bond to the State of Missouri in the penal sum of $2,500 upon these conditions: "NOW THEREFORE, if the said defendant shall personally be and appear in the Circuit Court on the S.V. 20th day of January 1958 and from time to time thereafter as he may be required by order of said court to answer the charge against him, for said offense not thence to depart without leave, for trial and all other proceedings herein, including the rendition of final judgment and sentence and if he shall abide and submit himself to the orders, judgment, sentence and process of said court, and if said cause be removed from said court by change of venue, shall personally be and appear before the court to which said cause shall be removed, at a time to be specified in the order of the court which it is removed and thereafter from time to time as he may be required by order of said court to which the cause is removed, not thence to depart without leave, for trial and all other proceedings herein, including the rendition of final judgment and sentence and shall abide and submit himself to the orders, judgment, sentence and process of said court, then this bond will be null, void and of no effect, otherwise to remain in full force and effect in accordance with law," and the surety further agreed as follows: "and all sureties herein submit themselves to the jurisdiction of the said court in which such indictment may be found or information filed and to any other court to which said cause may be removed by change of venue, and irrevocably appoint the Clerk or Clerks of said court or courts as their agent upon whom

may be served for them all notices, motions, pleadings and process concerning the forfeiture of this bond."

On April 21, 1958, the trial court made this entry: "This cause coming on regularly for hearing, defendant appears not." Thereafter the words "caused passed" were entered of record by the court on April 20, 1959, October 10, 1960, and January 16, 1961. On October 9, 1961, the state, through the DeKalb County prosecuting attorney, filed its motion seeking a judgment of default upon the bond heretofore described for the reasons that by the terms of the bond defendant was required to appear in court on the first day of the regular January 1958 term of court on January 21, 1958; that defendant failed to then appear and had since failed to appear and thereby had breached the conditions of the bond. The transcript contains a copy of a notice to the defendant and to surety's attorney in fact (who, by documents appearing in the transcript, was the duly constituted and appointed attorney in fact for surety), that the court would hear the state's motion for a default judgment on the bond at 9:30 a. m. on October 30, 1961. Also on October 9, 1961, the court entered an "order of forfeiture" wherein it was recited that in accordance with the terms and conditions of the bond Virgilito was required to appear in court on the first day of the regular January 1958 term on January 21, 1958, and that he did not appear on that date nor has he appeared since upon the first day of any regular term or on any other day, and that on January 21, 1958, the court had ordered the forfeiture of the bond, and the court therefore ordered, adjudged, and decreed that the bond executed as aforesaid "be and the same is hereby ordered forfeited."

On October 30, 1961, the cause was passed to December 14, 1961, at the request of counsel for Virgilito and on December 14, by agreement, a hearing on the motion was continued to January 15, 1962. On De-cember 29, 1961, appellant, sometimes herein called surety, appeared specially and filed its amended motion "To Dismiss Action To Forfeit Recognizance." Thereafter, on June 17, 1963, surety appeared specially and by leave filed another motion "To Dismiss State's Action Herein To Forfeit Bond," etc. In that motion the surety stated, inter alia, that a copy of the state's motion filed on October 9, 1961, was in fact mailed to it by mailing said copy to its attorney in fact in Omaha, Nebraska, on October 10, 1961, and surety was thereby notified that said motion would be heard on October 30, 1961. On July 22, 1963, the court found that the state's motion for judgment on the bond should be sustained and defendant-surety's motion to set aside the forfeiture of the bond should be overruled, and on that same day entered its order that plaintiff have judgment against Virgilito and The Summit Fidelity and Surety Company in the sum of $2,500 with interest thereon.

Surety has appealed from that judgment and contends the trial court erred in overruling its motion to dismiss for the reason that the court had no jurisdiction over surety's person or property because no lawful service of "process," i. e., the "State's Motion for Judgment for default against surety, a foreign surety insurance corporation licensed to transact business" in Missouri was had; and contends further that the action for a judgment of default on the bond was barred by the 3-year statute of limitations, Section 516.130.[1] We have jurisdiction because this is a civil action to which the state is a party. Article V, Section 3, Missouri Constitution, V.A.M.S.

We shall first consider the limitations question. Section 516.130 provides in pertinent part that an "action upon a statute for a penalty or forfeiture, where the action is given to the party aggrieved, or to such party and the state" shall be brought within three years. The provisions of that

---

1. All section citations refer to sections of RSMo 1959 and V.A.M.S.

section are made applicable to actions brought by the state by Section 516.360.

Appellant contends the 3-year statute applies for the reason that the state was the party aggrieved and the action was one "upon a statute for a forfeiture." The state contends the 10-year statute of limitations applies, Section 516.110, which provides in part that an action upon any writing for the payment of money shall be brought within ten years.

We are of the view that for the reasons hereinafter set forth the state is correct in its contention and the 10-year statute of limitations applies.

It is true, as appellant contends, that the bond given in this case provided for the payment of a penalty or penal sum by the surety upon a breach of the conditions of the bond and subsequent forfeiture thereof, but, as we shall hereinafter point out, that fact is not decisive of the question whether the three or 10-year statute applies.

The bond constituted a contract whereby the surety agreed that the defendant would be present for certain court proceedings and agreed further that if he wasn't, the surety would pay to the state the sum therein specified. It has long been held that while an action to forfeit such a bond grows out of a criminal proceedings and is based thereon, a proceedings for a judgment on the bond is a civil action "pure and simple, and should be dealt with accordingly." See State v. Gross, 306 Mo. 1, 275 S.W. 769, which, in effect, adopted the dissenting opinion in the prior case of State v. Wilson, 265 Mo. 1, 175 S.W. 603, 609, and, of course, overruled the majority opinion in Wilson.

Specifically, the 3-year statute of limitations is not applicable because "The term[s] 'penalties' and 'forfeitures,' as used in the various statutes of limitation, have been construed to have reference to those created by statute alone, and inflicted for dereliction of duty, or failure to perform specific acts, or for the commission of acts prohibited by statute." Vroom v. Thompson, 227 Mo.App. 531, 55 S.W.2d 1024, 1026

■ See also 53 C.J.S. Limitations of Actions § 89, pp. 1059, 1060; 8 Am.Jur. 2d, Bail and Recognizance, § 147, pp. 863, 864. Vroom v. Thompson, supra, was an action by a depositor against a bank director to recover the balance of a deposit which, it was alleged, the director knew or should have known was received by the bank after it was insolvent. In holding that the 3-year statute of limitations applied because the statute itself had created the penalty which the depositor sought to enforce, the court pointed out that the 1875 Constitution provided in Section 27, Article XII: " 'It shall be a *crime*, the nature and punishment of which shall be prescribed by law, for any * * * director * * * or other officer of any banking institution, to assent to the reception of deposits * * * by such banking institution, after he shall have had knowledge of the fact that it is insolvent, or in failing circumstances; and any such officer * * * shall be *individually responsible* for such deposits so received * * * with his assent.' (Italics ours.)" 55 S.W.2d 1025. The court then pointed out that the foregoing constitutional provision was not self-enforcing and consequently a law was required to prescribe the penalty and the manner of its enforcement; that the legislature in 1877 enacted present Section 362.345, providing in pertinent part that a director should not receive or consent to the reception of deposits after he had knowledge of the bank's insolvency or failing circumstances and that anyone "violating the provisions of this section shall be individually responsible for such deposits so received * * *." Thus the court concluded the statute enacted pursuant to the above-noted constitutional provision had itself created the "penalty" giving rise to the depositor's claim and thus the depositor's action was one "upon a statute for a penalty" and therefore governed by Section 516.130, the 3-year statute of limitations.

In the present case the constitutional provision involved is a part of the Bill of Rights, Article I, Section 20, by which bail

:is *guaranteed.* That section provides "all persons shall be bailable by sufficient sureties, except for capital offenses, when the proof is evident or the presumption great." Unlike the situation in Vroom v. Thompson, supra, the pertinent statutes (certain sections of Chapter 544, RSMo 1959, and V.A.M.S.) and certain Supreme Court Criminal Rules (here involved are Rules 32.05 and 32.12) V.A.M.R., which provide procedures for the implementation of the above-quoted constitutional guarantee, do not purport to and do not create a penalty or a forfeiture. The sole function of those statutes and those rules is to prescribe procedures for the enforcement of contractual provisions of a bond in a civil action.

Thus it is that we reached the conclusion stated heretofore, that the 3-year statute of limitations, Section 516.130, is not applicable and that the 10-year statute, Section 516.110, applies.

■■ We next consider appellant's contention that the circuit court was without jurisdiction over its person or property because no lawful service of the motion for a judgment of default was obtained. That contention is based upon two propositions: first, that the state was bound to have forfeited the bond and to have proceeded to a final judgment by scire facias under the provisions of Sections 544.640 and 544.650 and, second, that Section 375.210 provides "the sole and exclusive method for service of lawful process on licensed foreign insurance companies" and, consequently, the state's motion for judgment of default (the "process") must have been served upon the superintendent of insurance in accordance with that section to have given the trial court jurisdiction over the person or property of surety. Both those contentions ignore the fact that Supreme Court Criminal Rule 32 titled "Bail and Sureties" provides the procedure pursued by the state in this case. Criminal Rule 32.05, prescribing the conditions of the bond to be executed, provides in pertinent part:

"(c) If a person is admitted to bail after he has been bound over to answer a charge, or after an indictment has been found or an information filed against him, the condition of his bond shall be that he will appear in the court in which an indictment or information has been or may be found or filed against him, at a stipulated time and from time to time as required by the court, to answer the charge; that he will submit himself to the orders, judgment, sentence and process of the court having jurisdiction to try such offense, either originally or upon change of venue; and that he will not depart without leave." C.R. 32.05(c), V.A. M.R.

Criminal Rule 32.12 provides the procedure for obtaining a default judgment upon a bond which has been forfeited because of a breach of a condition thereof. That rule provides:

"If there is a breach of condition of a bond, the court in which a criminal case or proceeding is then pending shall declare a forfeiture of the bail. The court may direct that a forefeiture be set aside, upon such conditions as the court may impose, if it appears that justice does not require the enforcement of the forfeiture. When a forfeiture has not been set aside, the court shall on motion enter a judgment of default and execution may issue thereon. By entering into a bond the obligors submit to the jurisdiction of the court in which the defendant is required to appear under the condition thereof and in which a prosecution is or may be pending against the defendant and irrevocably appoint the clerk of the court as their agent upon whom any papers affecting their liability may be served. Their liability may be enforced on motion without the necessity of an independent action. The motion and such notice of the motion as the court prescribes may be served on the clerk of the court, who shall forthwith mail copies to the obligors to their last known addresses."

It is admitted that appellant received a notice provided for in the above rule, in that its attorney in fact, located in Omaha, Nebraska, who had executed the bond on

behalf of the surety with the specific authority of the surety, was notified by a notice mailed by the circuit clerk on October 10 of the fact that the state's motion for a judgment of default would be heard on October 30, 1961.

We have held heretofore that while independent actions by scire facias to enforce liability on recognizance bonds are not prohibited by C.R. 32.12, such independent actions are no longer necessary and that liability on such bonds may be enforced in accordance with the provisions of that rule. State v. Haverstick, Mo., 326 S.W.2d 92, 95 [2].

It follows that inasmuch as the state proceeded to a default judgment in the present case under the provisions of C.R. 32.12, and inasmuch as *appellant-surety specifically agreed in its contract,* heretofore set out, *that it* submitted itself to the jurisdiction of the circuit court and *irrevocably appointed the clerk of that court as its agent upon whom all notices, motions, pleadings, and process concerning the forfeiture of the bond might be served,* and inasmuch as surety admitted that it received a notice from the circuit clerk that the state's motion for judgment by default would be heard on October 30, 1961, and thereafter, although appearing specially, demonstrated that it did in fact have notice of the hearing, we are convinced that the provisions of Section 375.210 (providing the method by which process shall be served on a foreign insurance company) have no decisive effect in this case.

. We know of no reason why appellant-surety did not (by reason of its specific agreement contained in the bond) validly contract with the State of Missouri that in the event a condition of the bond was breached, the clerk of the court in which the action was pending was surety's agent for the receipt of notices, motions, pleadings, and process. By specifically agreeing in the bond that the circuit clerk was its agent for service, surety will not be heard in this civil action by the state on the contract provisions of the bond, to say that it must have been served pursuant to the provisions of Section 375.210. Certainly, if surety had appeared generally or had specifically waived the necessity for the service of *any* process, it would be clear that compliance with the service provisions of Section 375.210 was unnecessary. State ex rel. Ferrocarriles Nacionales De Mexico v. Rutledge, 331 Mo. 1015, 56 S.W.2d 28, 37 [8–12], 85 A.L.R. 1378; Henneke v. Strack, Mo.App., 101 S.W.2d 743, 746 [12]. In so far as surety's rights are concerned in this action, we perceive no decisive difference between a specific waiver of service of *all* process and the specific agreement that service could be effected as provided in the bond which contained provisions specifically providing for the obligations of a surety as set forth in C.R. 32.12. We do not reach any question pertaining to the construction or effect of the provisions of Section 375.210 in other situations; we simply hold that the provisions of Section 375.210 are irrelevant to the decision of any present question.

■ The appellant in its original brief did not contend that Rule 32.12 is inapplicable because it modifies or changes the substantive rights of a foreign insurance company; nor did it make any other contention that the rule is not within the purview of Article V, Section 5, 1945 Missouri Constitution, which gives the supreme court the power to "establish rules of practice and procedure for all courts." There is included in that constitutional provision a prohibition against changing substantive rights by rule. But appellant is not only barred from making the contention that Rule 32.12 changes substantive rights for the first time on appeal in its reply brief, but it seems clear enough, in any event, that the rule in question, at least in so far as it applies to the present fact situation, deals solely with procedural matters. See In Re Moore, Mo. App., 282 S.W.2d 856, 860 [8].

■ Appellant also contends in its reply brief, also not covered in the original brief, that the transcript shows there was in fact

no breach of the condition of the bond. That is because, says appellant, the record does not show that the court ever noted that defendant was not present on January 20, 1958, as required by the bond, or that the court ever thereafter made any order requiring defendant to be present on any subsequent date; and further that the trial court did not in fact order the bond forfeited on January 21, 1958, as recited in the court's order of forfeiture entered on October 9, 1961. Assignments of error first set forth in a reply brief do not present issues for appellate review. In re Buder's Estate, Mo., 317 S.W.2d 828, 827 [4, 5].

The judgment is affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.

